Good morning. May I please the court? Artem Saryan for the petitioner. And I would like to reserve two minutes of my time for rebuttal. This is a simple case of the assembly worker who discovered that her salaries and salaries of other workers were taken under pretenses that the production that they make at the plant go to the war-torn region. Once she discovered that, she discovered that powerful parliamentary member of government parliament pretty much lied to them and took the money and product never went to the war-torn region. On its face, the facts are pretty simple. The problem, of course, comes up when the judge denies this case originally in 2004 and then the case is lost on its way to appeal. The file is lost, the file comes back, and then judge pulls out her notes and starts making credibility findings. Judge uses her previous notes to make negative credibility findings, especially on a demeanor when the notes are not part of the record. And we have no way of knowing whether, indeed, those notes were properly made or not. But the most important part is those notes are not part of the record and they cannot be a substantial evidence in this case. Well, let's assume there were no notes at all. Couldn't the immigration judge rely on her recollection of the first hearing? But there is no record of recollection. No, I understand that. But what would be wrong with that? The wrong there is there is no review of it. It's not substantial evidence. Well, the honest truth is you've got a lot of arguments to make. But if, in fact, the I.J. confronts your client and she has a chance to explain and the I.J. then says what the explanation is, that's what we're really looking at here, isn't it? Not whether there's notes or not. I mean, we're really looking at was your client confronted about the potential inconsistencies? Did she have a chance to explain? And did the I.J. give a reasonable explanation about whether it was right or not? Because we're really looking for substantial evidence, aren't we? We are. It's a credibility determination, isn't it? That is correct. And so, therefore, it's a substantial evidence determination, and we have to look at all the issues, don't we, to see if all of the things were done in order to see whether there's substantial evidence. We definitely should. However, when the judge confronts her with a question and the Petitioner denies having answered in a different manner at a previous hearing, there is no more evidence to impeach her or not. Well. So just specifically limited evidence in this case to her answers. And her answers actually were negative. When she was asked, didn't you say this? And she said, I don't remember saying this. That's what the judge is now. Well, let's go to specific issues rather than just talking in general. What specific issues do you think are your or the best issues that the I.J. made this determination on that you feel was not fairly done? There are actually two. The alleged inconsistencies in the record that I.J. cited, they don't actually exist. A majority of the problems arose during interpretation. For example, interpretation of the word deputy. When my client stated this gentleman was a powerful deputy, it was interpreted as assistant to supervisor. Meanwhile, then later on, the interpreter said it's a parliamentary member. Well, let's take up the question about her party membership. Now, you'll agree with me, won't you, that there really only needs to be one issue and it needs to go to the heart of the matter? That's the law of the circuit. All right. So let's talk about her party membership. She said she was an organizer, but only says she sent a letter and went to meetings. She was confronted, and she said she began going to meetings on July 15th of 2002. Said that was the first time she ever attended the rally. Now, it seems to me that this goes to the heart of the matter. Would you agree? Well, I would state that she actually couldn't. I mean, isn't this the reason she's saying she was, that she would be discriminated against and she shouldn't go back to her country? Well, the reason that she was targeted, because she actually brought up the issue of money being stolen. She simply then began attending those rallies, during which the letter that she wrote was read, and that's where the targeting started. So she only stated once that she organized meetings and attended, and then she retracted, saying, no, I only attended them. I didn't organize them. Her relative did organize them. Well, as I read the transcript and I'm reading, ma'am, had you ever participated in rallies before that time when you were captured? I'm so sorry, I don't remember correctly the answer to that. Maybe, if maybe I did, but my memory is confused. Okay, well, a moment ago you told us very clearly that you started participating in July of 2002 and that you remembered that date quite well. Well, I do remember that day. I remember that day, but I don't remember whether I participated. I don't remember, and the I.J. concentrated on that and said, that's a material issue here, and he said, the I.J. suggested that that goes to the heart of the matter, and I'm looking for why that isn't substantial evidence. It is not because at this point it doesn't go to the heart of the matter. Her targeting was not because whether she organized the meeting or she participated in the meeting. The targeting was specifically because she brought up to the attention of others the corruption that was taking place in that. Well, and as I understand it, the I.J. noted that right during that particular confrontation, her demeanor shifted. She claimed confusion, and the I.J. rejected her explanation that she was confused, noting that it appeared your client had memorized certain dates, but not entirely memorized what events were supposed to be connected with those dates. Therefore, the I.J. concluded that her claimed confusion was not sufficient to explain the inconsistencies. My worry is there we are, heart of the matter. She's in a party, or she isn't. She's an organizer, or she isn't. She's doing what she has to do, or she isn't, and there was substantial evidence and confrontation in a matter to explain why isn't that enough. Well, because throughout the hearing, I.J. did not identify her demeanor as troubling. What the I.J. did, it went back, and when she read the decision, only then she brought this up. Usually throughout the hearing, the I.J. or government attorney would point to the specifics of the demeanor and will ask the record to reflect that. This didn't happen in this specific case. What the I.J. did, compared to the previous notes, then she also added what she believed her troubling demeanor was during the answers. Well, let's move to the second arrest. Was the rally at her house, or was it a rally, or what the situation is when confronted? Now, this is the time of the arrest. She said stress caused her problem. She didn't know exactly why, but stress had caused her to give differing responses, that it was at home. Again, the I.J. says the demeanor changed in this situation. Here's something right in the heart of the matter. Was she arrested? Where? What happened? What the deal was? And she did not have a good explanation of her differing and inconsistent responses. In her statement and throughout her testimony, except for one place, she consistently stated that she was arrested at home. In this specific place, it's administrative record page 121, when she was fed the answer by her attorney. In the leading questions, for some reason nobody objected, the government didn't object, the attorney specifically said, did you continue to participate in the meetings? The answer was yes. Did anything happen to you again? He emphasized again, and she just picked this up and says, yes, it happened again. Again during the rally. During the rally. Again captured and forcefully took to the quarters. That is correct. And when she's asked later, she said, no, that didn't happen during the rally. It happened, second arrest took place when they came and picked her up from home. Well, again, we're looking for substantial evidence, and we're looking for inconsistencies that go to the heart of the matter. And that's why I especially wanted you to explain why this isn't substantial evidence for these two circumstances. The others, I might even be willing to go with you. Some the BIA didn't even rely on. But on these, the BIA did rely. Actually, the BIA did not rely on this. The only thing BIA apparently relied on was the demeanor findings, which were made on the previous notes. BIA simply, in a boilerplate language, stated that the judge had enough evidence, and then specifically they identified the demeanor issues. Your time has expired, but I'll give you a couple minutes for rebuttal. Thank you. Here from the government. Good morning, Your Honors. May it please the Court, my name is Christian Morisi, appearing on behalf of the U.S. Attorney General. And would you move the microphone a little closer to you? Very good, thank you. Your Honors, this has been discussed. The issue in this case is whether or not substantial evidence supports the agency's adverse credibility determination in this case. And as Your Honors have pointed out, in order for that to be supported by substantial evidence, there only needs to be one inconsistency that goes to the heart of the petitioner's claims. And in this case, the record reveals that there was not just one inconsistency that went to the heart of her claims, but indeed multiple inconsistencies throughout and within her testimony and evidence that went to the heart of her claims. You know, I think, and I'll hear and rebuttal whether I'm right or wrong, but I think she relied too heavily, she and her counsel, on the fact that something was lost and was not here. And the record is still there. And isn't that the problem? I think she, as I understood his argument, there's no substantial evidence that can't be because the record was lost. Yes, Your Honor. And specifically for that reason, a second hearing was conducted. That record is before the Court. And that record does support the agency's adverse credibility determination. Specifically ---- But one thing that troubles me, if you don't mind the interruption, is that in the second hearing, the I.J. starts off, and this is what the I.J. says in her oral decision. It's clearly unfair to the respondent to take the Court's notes, which are not part of the record or counsel's questions, as evidence. So far, so good. But on the very next page, here's what the I.J. says. In this case, the Court's notes from the prior demeaning indicated that the respondent's demeanor throughout the proceeding was extremely strange. And it goes on from that. So the Court starts out, or the immigration judge starts out by saying, we can't consider evidence from the prior hearing of my notes, they're not available, and then starts to make demeanor findings based on her notes from the prior hearing. It's hard to see how that's fair to the respondent, to the Petitioner. Yes, Your Honor. The government would concede that the immigration judge does make mention of the fact that her notes were not evidence. It's not entirely clear from the record if all of those observations are from her notes or from her recollection of the prior hearing. However, even if you were to parse out the mention, the demeanor determination based on the first hearing, the immigration judge also goes into some detail regarding the Petitioner's demeanor just based on the second hearing. In fact, she goes on discussing direct examination during the second proceeding, which is the record before the Court. But then I think you'll concede this, that the IJ compares the demeanor to the first hearing and says, well, she was very poised during this presentation as opposed to the last one, but then started exhibiting the same types of behavior. So it may or may not be clear that she was relying on notes or recollection, but it appears to me the notes. And the thing that worries me about that is that the BIA did rely in great detail on the demeanor finding, place great reliance, I should say, on the demeanor finding. Yes, Your Honor. The Board does discuss the demeanor finding in its decision. However, in this case, the standard of review for the Court would be to look at both the Board's decision and the immigration judge's decision. And in this case, the immigration judge's decision, in addition to making those in addition to the petitioner's demeanor, both on direct and cross with regard to just the second hearing as well, in addition to the multiple inconsistencies that the immigration judge lists in her extensive opinion. Right. Well, your answer actually segues into the question I have here, which is this. This was not a Burbano affirmance by the BIA, right? That's correct, Your Honor. So we review the BIA's decision, not the IJ's. But isn't it, are we limited to that? To simply the Board's decision, Your Honor? Yes. Under pre-real ID. Your Honor, I believe the correct standard of review would be to look at both the Board's decision and the immigration judge's decision in this case. Well, since it's not a Burbano affirmance, they didn't adopt the IJ's findings. I believe, Your Honor, in a situation where the Board affirms the immigration judge and gives reasons for doing so, that the correct standard of review would be to review both of the decisions in this case. And in doing so, Your Honors, I think that it would be important to look at the specific and multiple instances of inconsistencies that did go to the heart of the Petitioner's claim, first and foremost, when and where this alleged second arrest occurred. The Petitioner is basically indicating that there were two incidents of harm that she experienced that made up her past persecution case, and the record clearly shows that there was not just one time that she was inconsistent in this testimony, as Petitioner's counsel just indicated, but on two, in two separate places within the record, the Petitioner indicates that she was arrested during a rally. In her testimony, she mentions that line, again, during a rally, she was arrested. And also the notes from the asylum interview that the Petitioner had with an asylum officer indicates that she told the asylum officer that she was arrested a second time during a march, whereas later in her testimony, the Petitioner indicates that this happened at her house or at her home, which she also indicates in her asylum statement. So the record is really back and forth on where specifically this arrest happened, as well as the date. There's inconsistency in that, in her testimony, she testifies that this arrest happened on September 10th, 2001, whereas during her asylum interview, she indicated to the asylum officer that this occurred on August 10th, 2002. So this month discrepancy would also be an inconsistency. And the Petitioner was specifically asked during her hearing if she recalled being interviewed by an asylum officer. She acknowledged that she was interviewed at that time, that she had an interpreter. She testified that she didn't have any trouble understanding the interpreter, recalled that she swore to tell the truth and that she did tell the truth during that interview, signed an oath during that interview indicating that she was telling the truth during that asylum interview. So these inconsistencies and the fact that the Petitioner was given the opportunity to explain the inconsistencies but offered an explanation that the immigration judge reasonably found to be insufficient and, in fact, indicated that she had considered but found this explanation to be insufficient in her decision, this alone offers substantial evidence for the agency's decision in this case. But in addition to this instance, there are others that there are. And correct me if I'm wrong, but certainly the second arrest seems to go to the heart of her claim and her membership in the party goes to the heart of the claim. I'm not sure that the rest of the purported inconsistencies go to the heart of the claim. Would you elaborate on your views on the other inconsistencies and why you think they go to the heart of the claim? Certainly, Your Honor. In addition to these two, the second arrest and Petitioner's participation, level of participation, membership in the Armenian People's Party, I think another inconsistency that would go to the heart of the claim would be the inconsistencies surrounding this or these alleged letters that the Petitioner wrote, which prompted the abuse that she claimed she experienced. It would be the government's ---- Was she confronted about that inconsistency? Yes, Your Honor. She was asked about some of the inconsistencies that surrounded this. One form of inconsistency, one type of inconsistency that ---- I guess when I read about the letters, how many letters she wrote, it didn't seem to me that she was really confronted about that. Maybe you could cite where she was. It seemed to me that she might have been confronted about general things, but as to how many letters she wrote didn't seem to be the subject of the confrontation. On that specific area of inconsistency surrounding the letters, Your Honor, I don't believe there were ---- there was an exact confrontation. One issue said ---- But that really wouldn't make much of a difference anyway, would it, how many letters she wrote? I mean, to the heart of the claim? Your Honor, I think in terms of the timing of these letters or who asked her to write them, those would be examples of inconsistencies that would go to the heart since they were the impetus for all of the harm that she claimed that she experienced in Armenia. She should certainly be able to remember who asked her to write these letters. One inconsistency in that regard was her testimony that her friend Yerim asked her to write this letter and then to make a second copy of this letter subsequently, which only came out later during her testimony, whereas in her asylum application she indicates Yerim asked her to write one letter, then party headquarters asked for a separate profile. And when she was asked specifically about her explanation, first she testified only Yerim asked her to write these letters. Nobody else asked her to write either letter. And when she was confronted about her asylum statement, which indicated that headquarters had asked her, then her testimony changes such that she claims that, well, Yerim was a part of the party, so by that she meant that Yerim asked her to write the letter. And the immigration judge pointed that out in her decision and found this explanation reasonably to be insufficient as well. Your Honors are correct that there were several other inconsistencies throughout her story, which may or may not have gone to the heart of her claims, but the fact that there are at least these two to three inconsistencies that went directly to the heart of her claims, one of these alone would be enough to offer substantial evidence for the agency's decision. And certainly taken collectively, considered collectively, these inconsistencies and discrepancies certainly provide substantial evidence for the agency's adverse credibility determination. And for those reasons, we'd ask the Court to deny the petition for review. Roberts. Thank you, counsel. We'll give you two minutes for rebuttal. I want to briefly touch three small issues. Number one, the discrepancy, alleged discrepancy as to whether the headquarters requested the letter or not. She clearly explained that her friend Yerim was working at the headquarters of the party and he requested a letter. So this clearly explains when she said headquarters requested a letter. As to asylum officer notes, there is a letter that the asylum officer is not available and asylum officer didn't testify. The law of the circuit is very clear that you cannot use asylum officer notes if the asylum officer did not testify and confirm his findings. And finally, as to the BIA's finding, BIA made in per curiam decision, three judges made that decision. It is decision of the agency at this point. I understand why the government would like to bring the IJ's decision in as the main decision in this case. But it is per curiam decision of the board, of the agency, and they specifically discussed but only relied on negative credibility findings made on the demeanor findings. They specifically said demeanor findings. Well, just a minute. It isn't quite that simple. I mean, there are some language, there is language in the opinion which you might rely, but I read the respondent has likewise failed to establish through credible testimony, documentary evidence, or evidence of country conditions that is more likely than not she would be tortured and the request for relief was properly denied. I read other, I mean, I can go up here where the findings explicitly describe what it was. So I'm having a tough time. What is your view on the standard we should use in this particular matter? This particular case, since the agency, since BIA, Board of Immigration Appeals, made its findings, but three judges, that's where the findings should be reviewed. If a BIA reviews an IJ decision for clear error, can't we look to the oral decision of the IJ as a guide to lay behind the BIA conclusion? Yes, we can. Can we look at the reasons explicitly identified by the BIA? We can look at the reasoning of the IJ in support of those reasons? Yes, we can. However, in this specific case, they only cited to demeanor. Specifically, they cited to demeanor findings. Everything else was a boilerplate, but not a Bourbon or boilerplate. The last paragraph, Justice Smith, that you identified. It is to CAT. I understand. That's a CAT denial. It's just only information against torture. I understand. Thank you very much. Thank you for your argument. The case, as heard, will be submitted for decision.
judges: Farris, Thomas, Smith